**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

EVERETT CURTIS FLESHER,

                Plaintiff,

v.                                     CIVIL ACTION NO.   2:14-cv-30661

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Everett C. Flesher's Complaint seeking review of the final decision of the Acting Commissioner of Social Security (the "Commissioner").   (ECF No. 2.)   On January 6, 2015, this action was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings and a recommendation ("PF&R").   (ECF No. 4.) On January 5, 2016, the Clerk transferred the referral of this action to United States Magistrate Judge Omar J. Aboulhosn.   (ECF No. 16.)   Magistrate Judge Aboulhosn filed his PF&R, (ECF No. 17), on February 1, 2016, recommending that this Court deny Plaintiff's request for judgment on the pleadings, (ECF No. 11), grant the Commissioner's request for judgment on the pleadings, (ECF No. 14), affirm the final decision of the Commissioner, and dismiss this matter from the Court's docket.   Plaintiff filed timely objections to the PF&R on February 10, 2016 (the "Objections").   (ECF No. 18.)

1

For the reasons that follow, the Court **OVERRULES** the Objections, (*id.*), **ADOPTS** the PF&R, (ECF No. 17), **DENIES** Plaintiff's request for judgment on the pleadings, (ECF No. 11), **GRANTS** the Commissioner's request for judgment on the pleadings, (ECF No. 14), **AFFIRMS** the decision of the Commissioner, and **DISMISSES** this action.

## I.  *Procedural Background*

The facts concerning this matter are fully set forth in the PF&R and need not be repeated here at length.   In short, Plaintiff filed an application for disability insurance benefits and supplemental social security income on October 7, 2011, alleging disability as of October 2, 2011. (ECF No. 9–2 at 18; ECF No. 9–6 at 2.)   The application was initially denied on December 13, 2011, (ECF No. 9–4 at 4–25), and upon reconsideration on January 4, 2012, (*id.* at 27–40).

A hearing was held before Administrative Law Judge I. Kay Harrington (the "ALJ") on May 16, 2013.   (ECF No. 9–2 at 35–68.)   On September 6, 2013, the ALJ issued an unfavorable decision.[1]   (*Id.* at 15–29.)   The Appeals Council denied review of the ALJ's decision on October 27, 2014.   (*Id.* at 2–7.)   Thereafter, on December 23, 2014, Plaintiff filed his Complaint in this Court.   (ECF No. 2.)

---

[1] The ALJ found at step one of the "sequential evaluation" process that Plaintiff "has not engaged in substantial gainful activity since October 2, 2011, the alleged onset date."   (ECF No. 9–2 at 20.)   At step two, the ALJ found that Plaintiff has the following severe impairments: cervical spine arthropathy, post traumatic osteopenia status post left heel fracture, post traumatic arthrosis, and hypertension.   (*Id.* 20–21.)   The ALJ also found that Plaintiff had the following non-severe medically determinable impairments: chronic obstructive pulmonary disease (COPD), esophageal reflux, and obesity.   (*Id.* at 21.)   At step three of the analysis, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   (*Id.* at 22.)   The ALJ next found that Plaintiff "has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c)," with certain listed limitations.   (*Id.* at 22–27.)   At step four, the ALJ found that Plaintiff was "capable of performing past relevant work as a truck driver."   (*Id.* at 27.)   The ALJ further determined, as an "alternate finding" at step five, that "there are other jobs that exist in significant numbers in the national economy that the claimant can also perform."   (*Id.* at 27–29.)   Based on both of these conclusions, the ALJ determined that Plaintiff was not disabled.   The ALJ relied on the testimony of a vocational expert in making this disability determination.   (*See id.*)

## II.    Standard of Review

### A.    Review of the PF&R

This Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendations to which no objections are addressed.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  In addition, the Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."  *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

### B.    Review of the ALJ's Findings and Decision

"Under the Social Security Act, [a reviewing court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard."  *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)); *see, e.g.*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law.").  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  "[I]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Mastro*, 270 F.3d at 176 (alteration in original) (quoting *Laws v.*

*Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).   "In reviewing for substantial evidence, [the court should] not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary."   *Craig*, 76 F.3d at 589 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).   If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision.   *Id.* (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

A plaintiff "bears the burden of proving that he is disabled within the meaning of the Social Security Act."   *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5) and *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981)).   "The term 'disability' means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."   42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a five-step "sequential evaluation" process to evaluate a disability claim.[2]   *See* 20 C.F.R. §§ 404.1520(a) & 416.920(a)(4).   The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five.   *See Bowen v.*

---

[2] In *Hall v. Harris*, the Fourth Circuit provided the following description of the "sequential evaluation" analysis:

> Under the process the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work.   By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability.   The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job.

658 F.2d at 264–65; *see also* 20 C.F.R. §§ 404.1520 & 416.920 (providing the "sequential evaluation" analysis).

*Yuckert*, 482 U.S. 137, 146 n.5 (1987).   If a decision regarding disability can be made at any step of the process, however, the inquiry ceases.   *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).

## III.   Discussion

Plaintiff raises three objections to the findings and recommendations in Magistrate Judge Aboulhosn's PF&R.   First, Plaintiff asserts that the Magistrate Judge erred in finding that the ALJ was not required to solicit an updated medical opinion when determining step three medical equivalence.   (ECF No. 18 at 2–3.)   Second, Plaintiff argues that Magistrate Judge Aboulhosn erred in finding that the ALJ's step three determination was supported by substantial evidence.   In this objection, Plaintiff specifically contends that the ALJ failed to provide an adequate explanation for her step three findings, and that without such explanation substantial evidence review is impossible and remand appropriate.   (*See id.* at 3–6.)   Third, Plaintiff contends that the Magistrate Judge committed error in finding that "new evidence" submitted by Plaintiff to the Appeals Council and made a part of the administrative record did not justify remand for further consideration in front of the ALJ.   (*Id.* at 6–8.)   For the reasons discussed below, the Court **OVERRULES** all of Plaintiff's objections to the PF&R.

## A.     Step Three Determination

Plaintiff's first two objections are to the ALJ's decision-making process at step three of the sequential evaluation.   At steps two and three, the Social Security Administration ("SSA") considers the severity of a claimant's set of impairments.   At step three particularly, the SSA's inquiry is into whether a claimant's severe impairment or combination of impairments "meets or equals one of our listings . . . and meets the duration requirement."   20 C.F.R. § 404.1520(a)(4)(iii).   If the impairment meets a listing, then the SSA "will find that [the claimant

is] disabled." *Id.* The referenced listings appear at 20 C.F.R. part 404, subpart P, Appendix 1, and represent "descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." *Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990). A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition meets or equals any of these listed impairments. 20 C.F.R. §§ 404.1520(d) and 416.920(d); *see also Zebley*, 493 U.S. at 532 ("[I]f an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work."). The listings operate as a set of legal conclusions as to the severity of certain types of disabilities, and accordingly "streamline[] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153.

Because meeting a listing obviates the need for further inquiry into a claimant's disability, a claimant must meet a higher standard of impairment to qualify for disability under step three than under the other, more fact-specific steps of the sequential analysis. *See Kiernan v. Astrue*, Civil Action No. 3:12CV459-HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) ("Necessarily, the regulations establish more stringent criteria to meet the listings than is required to meet the statutory standard for disability." (citing *Zebley*, 493 U.S. at 533)). The burden is on the claimant to show that he meets or medically equals a listed impairment, and that burden requires the claimant to demonstrate that his impairment either meets "*all* of the specified medical criteria" of a given listing or is "equal in severity to *all* the criteria for the one most similar listed impairment." *Zebley*, 493 U.S. at 530–31.

As is the case throughout the sequential evaluation process, an ALJ must set forth the reasons for his step three determination. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000); *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). Where there is "ample evidence" that a claimant's impairment meets or equals one of the listed impairments, an ALJ has a "duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria." *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999); *see also Cook v. Heckler*, 783 F.2d 1168, 1172–73 (4th Cir. 1986) (finding an ALJ's explanation at step three insufficient to allow for substantial evidence review where it neither "identified the relevant listed impairments" nor "compared each of the listed criteria to the evidence of [the claimant's] symptoms"); *Radford*, 734 F.3d at 295 (noting that the ALJ should always provide a record of "which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to record evidence," and finding ALJ's cursory step three explanation inadequate where the claimant's "medical record include[d] a fair amount of evidence supportive of his claim").

An ALJ's conclusory statement that a claimant's impairment does not meet a listed impairment, unaccompanied by any findings comparing a claimant's symptoms to listed criteria, is insufficient. *See id.* at 295–96; *Fox v. Colvin*, ---F. App'x---, 2015 WL 9204287 (4th Cir. 2015); *Brown v. Colvin*, ---F. App'x---, 2016 WL 502918 (4th Cir. 2016). However, an ALJ "need only review medical evidence once in his decision," *McCartney v. Apfel*, 28 F. App'x 277, 279 (4th Cir. 2002), and a court should read the ALJ decision as a whole to determine whether substantial evidence supports the step three finding. *See Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011) (citing *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733–34 (10th Cir. 2005)); *Green*

*v. Chater*, 64 F.3d 657, at *3 (4th Cir. 1995); *see also Cappillo v. Comm'r of Soc. Sec.*, Civil Action No. 5:15CV28, 2015 WL 6509127, at *3 (N.D. W. Va. Oct. 28, 2015) (noting that a court "need not remand a Social Security disability determination when . . . there is elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to Step Three analysis" (quoting *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 522 (D. Md. 2002))).   Ultimately, an ALJ's duty of explanation at step three is to provide sufficient analysis to allow a reviewing court to evaluate whether substantial evidence supports her findings.   *Radford*, 734 F.3d at 295; *Cook*, 783 F.2d at 1173.   Where a court is able to determine that the ALJ's step three conclusion is supported by substantial evidence, the Commissioner's decision must be upheld.   *See, e.g.*, *Meador v. Colvin*, Civil Action No. 7:13-CV-214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) (noting that an ALJ's explanation at step three is satisfactory "so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion," and that ultimately, the role of a court is to "examine the record to determine if substantial evidence supports the ALJ's conclusion").

### 1.   First Objection: Updated Medical Opinion

Plaintiff's first step three objection is that the Magistrate Judge erred in finding that the ALJ was not required to get an updated medical opinion in light of additional medical evidence in the case record.   As authority, Plaintiff points to SSR 96-6p, an administrative ruling pertaining to the manner in which an ALJ must consider the disability-related findings of state agency medical and psychological consultants, and in particular providing guidelines for consideration of "opinions about equivalence to a listing in the Listing of Impairments."   Soc. Sec. Admin., SSR 96-6p, *Policy Interpretation Ruling Titles II and XVI: Consideration of Administrative Findings*

*of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence* (July 2, 1996).   Although the regulations provide that an ALJ is never bound by a state agency consultant's findings and that the ultimate responsibility for determining step three equivalence "rests with the administrative law judge or Appeals Council," 20 C.F.R. § 404.1526(e), it is nonetheless the "longstanding policy" of the SSA that "the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge . . . must be received into the record as expert opinion evidence and given appropriate weight."   SSR 96-6p; *see also Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.").

Plaintiff does not contest that the ALJ satisfied her obligation to consult the medical opinion of a state agency expert on the issue of equivalence in this case.   The record includes Disability Determination and Transmittal Forms, signed by state agency expert Dr. Schaffzin and incorporating by reference Dr. Schaffzin's physical residual functional capacity form and the medical findings contained therein.[3]   (*See* ECF No. 9–3 at 2–5.)   Rather, Plaintiff argues that

---

[3] With respect to an ALJ's duty on this issue, SSR 96-6p provides, in pertinent part:

The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) . . . ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. . . . [V]arious other documents on which medical and psychological consultants may record their findings[] may also ensure that this opinion has been obtained at the first two levels of administrative review.

When an administrative law judge or the Appeals Council finds that an individual's impairment(s) is not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record may be satisfied by any of the foregoing documents signed by a State agency medical or psychological consultant.

because Dr. Schaffzin's medical opinion was rendered in December 2011, and significant medical evidence was subsequently received into the record before the ALJ that had the potential to modify Dr. Schaffzin's determination on equivalency, the ALJ was required to obtain an updated medical opinion on that issue from a state agency physician.   (ECF No. 18 at 3.)   In support, Plaintiff points to another portion of SSR 96-6p, which provides, in relevant part:

> [A]n administrative law judge and the Appeals Council must obtain an updated medical opinion from a medical expert in the following circumstance[] . . .
>
> When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR 96-6p.

By its terms, the quoted language commits the decision to obtain an updated medical opinion to the discretion of the ALJ.   *See Hardee v. Comm'r of Soc. Sec.*, 188 F. App'x 127, 129 (3d Cir. 2006) (noting that SSR 96-6p and the relevant regulations "accord an ALJ broad discretion in determining whether to consult with a medical expert"); *Foley v. Barnhart*, 432 F. Supp. 2d 465, 483 (M.D. Penn. 2005) (upholding an ALJ's decision not to seek updated medical reports, even when the ALJ found the reports in the record outdated, because SSR 96-6p "makes it mandatory for an ALJ to get an updated medical opinion *only if* the ALJ believed the new medical evidence would change the expert's findings that the impairments were not equivalent"); *Kirby v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-13-3628, 2014 WL 6471599, at *3 (D. Md. Nov. 17, 2014) ("SSR 96-6p makes clear that the determination [as to whether to solicit an updated medical opinion about equivalence] is discretionary and within the province of the ALJ.").

---

SSR 96-6p.   As noted above, the record includes the referenced SSA-831 Disability Determination and Transmittal Forms, which appear to satisfy the ALJ's regulatory obligation to consult expert medical opinion on the issue of equivalence.

Here, although Plaintiff assails Dr. Schaffzin's disability opinion as "predictive in nature," (ECF No. 18 at 2), there is nothing inherently problematic about a medical expert offering an opinion as to the likely duration of a given impairment. Congress has defined the durational requirement underlying entitlement to disability benefits as a medically determinable impairment that "has lasted *or can be expected to last* for a continuous period of not less than twelve months." *Laws v. Celebrezze*, 368 F.2d 640, 643 (4th Cir. 1966) (emphasis added) (citing 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A)). Moreover, an ALJ "may rely on a medical source opinion that did not have access to the entire medical record, so long as the ALJ accounts for any subsequent evidence, and substantial evidence supports the ALJ's decision." *Putnam v. Colvin*, Civil Action No. 6:13-cv-925-MGL-KFM, 2014 WL 3809492, at *15 (D.S.C. July 30, 2014) (citing *Thacker v. Astrue*, Civil Action No. 3:11CV246-GCM-DSC, 2011 WL 7154218, at *6 (W.D.N.C. Nov. 28, 2011) *report and recommendation adopted*, No. 3:11-CV-00246-GCM, 2012 WL 380052 (W.D.N.C. Feb. 6, 2012)).

In this case, the ALJ considered the medical evidence submitted subsequent to Dr. Schaffzin's opinion and reached her ultimate step three determination upon the entire medical record available at the time. (*See* ECF No. 9–2 at 20–21 (determining the severity of Plaintiff's impairments with reference to medical records post-dating Dr. Schaffzin's opinion, including those that were submitted subsequent to the administrative hearing).) The determination on equivalency was ultimately the ALJ's to make and, as will be discussed below, substantial evidence supports the ALJ's step three finding. Accordingly, this Court finds no basis to disturb the discretionary determination by the ALJ that the medical evidence of record was not likely to change Dr. Schaffzin's findings regarding medical equivalency. *See Green v. Astrue*, Civil

11

Action No. WGC-09-2897, 2011 WL 1542505, at *8 (D. Md. Apr. 21, 2011) (noting that it is the ALJ's responsibility to determine whether a listing has been met or equaled and accordingly finding no error for failure to obtain an updated medical opinion where substantial evidence supported that step three determination and the ALJ "did not find that the *post*-reconsideration level medical evidence may change the state agency medical consultants' findings"); *Gonzales v. Colvin*, 69 F. Supp. 3d 1163, 1167 n.3 (D. Colo. 2014) (finding that where the ALJ expressly considered medical evidence post-dating the state agency consultant's equivalency opinion, ALJ was "well within his discretion to determine, at least implicitly, that the evidence was unlikely to change the state agency consultant's medical opinion").  The Court **OVERRULES** Plaintiff's first objection.

### 2.  Second Objection: Failure to Provide Adequate Step Three Explanation

Plaintiff contends that the ALJ's "evaluation and finding" at step three was not supported by substantial evidence because the ALJ failed to explain adequately her step three determination that Plaintiff's severe left heel impairment did not meet or equal Listings 1.02A and 1.03.[4] Plaintiff argues that remand is appropriate because the ALJ's insufficient explanation leaves this Court without a basis upon which to conclude that substantial evidence supports the ALJ's decision.  The Court disagrees, and determines that the ALJ's explanation adequately sets forth

---

[4] In his original briefing before the Magistrate Judge, Plaintiff made clear that his legal objection to the ALJ's step three determination related to its evaluation of his left heel impairment.  (*See* ECF No. 11 at 8–10.)  Plaintiff's objections to the PF&R cast this argument in more general terms, challenging the Magistrate Judge's decision to uphold the ALJ's decision that "Flesher's impairments did not meet or equal Listings 1.02A and 1.03."  (ECF No. 18 at 5.)  However, Plaintiff's reference to Listings 1.02A and 1.03, as well as his citation only to the ALJ's reasoning for finding that the left heel impairment did not meet a listing, (*see id*. at 4), makes clear that his step three objection is to consideration of his left heel impairment only.  That was the argument raised before the Magistrate Judge and the impairment addressed in the PF&R's step three analysis.  Accordingly, the Court construes Plaintiff's second objection as challenging the ALJ's step three determination as to Plaintiff's left heel impairment only.

her basis for determining that Plaintiff's impairment did not meet a listed impairment and that her ultimate determination on that issue is supported by substantial evidence.

Both Listings 1.02A and 1.03 categorize musculoskeletal system impairments and both require that a claimant be rendered unable to ambulate effectively.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.02A and 1.03; *see also Masha v. Astrue*, Civil No. 3:10CV248, 2010 WL 6802749, at \*4 (E.D. Va. Nov. 19, 2010) (noting that under both Listing 1.02A and 1.03, the impairment "must result in an inability to ambulate effectively" (citation omitted)) *report and recommendation adopted*, Civil Action No 3:10-CV-248, 2011 WL 2471537 (E.D. Va. June 21, 2011).   In general, inability to ambulate effectively means an extreme limitation on the ability to walk, characterized by a limitation on lower extremity functioning severe enough to prevent independent ambulation without the use of a hand-held assistive device that limits the functionality of both arms and hands.[5] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(2)(b).   In her decision, the ALJ identified the listings relevant to Plaintiff's left heel impairment, and stated that Plaintiff failed to meet either for the specific reason that he failed to produce evidence that he "has inability to ambulate effectively, or

---

[5] In full, the relevant regulation provides the following guidance for what the SSA means by an inability to ambulate effectively:

    (1)  Definition.   Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e. an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.   Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . . .

    (2)  To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.   They must have the ability to travel without companion assistance to and from a place of employment or school.   Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.   The ability to walk independently about one's home without the use of assisted devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(2)(b).

that effective ambulation did not occur within 12 months of onset as required to meet or equal the listing."   (ECF No. 9–2 at 22.)

The ALJ did not extensively discuss the severity of Plaintiff's left heel impairment at step three.   She did, however, document the medical records and medical source opinion testimony relating to Plaintiff's ability to function in spite of his left heel impairment in other portions of her decision.   Notably, in assessing Plaintiff's residual functional capacity ("RFC"), the ALJ detailed Plaintiff's left foot impairment from start to finish, documenting the initial injury, the resulting surgery, and Plaintiff's subsequent rehabilitation efforts and treatment records.   (*Id*. at 23–27.) A review of the treatment records in the weeks following the surgery led the ALJ to conclude that "the claimant sustained an injury to his left heel, which required a surgical procedure.   However, the claimant achieved a good result with his procedure after a short recovery time, as demonstrated on subsequent x-rays showing significant improvement of his injury."   (*Id*. at 23–24.)

As detailed elsewhere in the record, although Plaintiff's original left heel injury occurred in October 2011, he continued to see medical professionals about the effects of that injury until well into 2013.   The ALJ reviewed Plaintiff's treatment records throughout that time period, including reports from Dr. Paul Nielsen, who examined Plaintiff's foot, back, and neck, Dr. Kimberly Burgess, who treated the Plaintiff in the aftermath of his initial surgery, and Dr. C.P. Mayo, a pain specialist who primarily helped Plaintiff cope with back and neck pain.   (*Id*. at 24–25.)   In particular, the ALJ noted a report from Jessica Wooten, FNP–BC, from February 7, 2013, which noted that Plaintiff "had normal gait and stance," (*id*. at 24), and a similar report from Murrita Bolinger, CFNP, who noted on January 14, 2013 that Plaintiff was "[s]elf-reliant in usual daily activities and fully able to manage the household," (*id*. at 26).   These conclusions, relating

14

specifically to Plaintiff's ability to ambulate effectively, are consistent with the ALJ's ultimate assessment of Plaintiff's symptoms: "the claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible . . . The objective findings do not corroborate the allegations to the disabling extent asserted."   (*Id*. at 23.)

The ALJ further noted, after reviewing records from all of Plaintiff's treating sources, that no treating source had recommended any type of restriction to account for the Plaintiff's claimed total inability to function.   (*Id*. at 25–26.)   Taking all of this into account, the ALJ determined that Plaintiff had an RFC to perform medium work, allowing for some degree of standing and walking with the assistance of a hand held device.   (*Id*. at 22.)   Accordingly, the ALJ decision demonstrates that the ALJ considered the relevant medical evidence, including evidence related to Plaintiff's ability to ambulate, compared it to Plaintiff's reports of the limiting effects of the impairment, and determined that Plaintiff's heel impairment simply did not pose any extreme limitation on his ability to walk or otherwise limit his ability to perform medium levels of work with appropriate accommodations.

As such, this case does present the situation addressed in Plaintiff's cited cases, *Radford* and *Fox*.   In each of those decisions, the ALJ wholly failed to specify any reason as to why the claimant's severe impairment did not equal the criteria of a listed impairment.[6]   Such perfunctory

---

[6] In *Fox*, the ALJ's step three analysis stated, in its entirety, that:

> Although the claimant has 'severe' impairments, they do not meet the criteria of any listed impairments described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1).   No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of Impairments.   In reaching this conclusion the undersigned has considered in particular, sections 9.00(B)(5) and 11.14.

*Fox*, 2015 WL 9204287, at *4.   The Court determined that such conclusory analysis, unsupported by any specific findings about why the claimant's impairments did not meet any specific listed criteria, "offered nothing to reveal *why*

analysis identified no basis in support of the step three determination and accordingly lacked the "necessary predicate" to allow a reviewing court to "engag[e] in substantial evidence review." *Radford*, 734 F.3d at 295 (citing *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984)).   Here, on the other hand, the ALJ determined that Plaintiff's left heel impairment did not meet a listing based on the lack of evidence in the record demonstrating that the condition prevented him from ambulating effectively for any twelve-month period, and then proceeded to document the evidence relating to that impairment in the RFC assessment.   Accordingly, this Court is able to determine that the ALJ's conclusion as to ambulation is supported by substantial evidence.   That evidence is aptly summarized in the PF&R, and the Court agrees with the Magistrate Judge's conclusion that, though the plaintiff "walked with some pain and had some difficulty standing, there is no evidence that he had an extreme limitation in his ability to walk."[7]   (ECF No. 17 at 22.)

---

[the ALJ] was making his decision."   *Id.*; *see also Radford*, 734 F.3d at 292, 295 (finding ALJ explanation inadequate where it simply noted that the ALJ had considered, "in particular," certain listings and generally stated that none of the state medical examiners had concluded that any listed impairment was met).

[7] In his objections, Plaintiff asserts that the Magistrate Judge "supplied *post hoc* rationale that the ALJ did not provide in making her finding at step three," and "provided a full analysis of the evidence" beyond that provided by the ALJ. (ECF No. 18 at 4.)   Plaintiff does not cite to any cases in support of this challenge to the Magistrate Judge's substantial evidence review.   However, it is a well-established principle of administrative law that in the context of reviewing agency action, "courts may not accept appellate counsel's post hoc rationalizations for agency action; . . . an agency's discretionary order [may] be upheld, if at all, on the same basis articulated in the order by the agency itself." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–169 (1962).   "While [a court] may not supply a reasoned basis for the agency's action that the agency itself has not given, we will uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned."   *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974) (citations omitted).

Insofar as this principle of judicial review of agency action is implicated here, the PF&R in this case furthers no impermissible post hoc justification.   Instead, the Magistrate Judge set forth the conclusion reached by the ALJ— that there was no evidence in the record proving Mr. Flesher's inability to ambulate effectively for the requisite duration—and proceeded to document the substantial evidence in the record in support of that reasoned conclusion. As noted above, the ALJ's step three determination was not so lacking in explanation as to frustrate the purpose of substantial review, and the Magistrate Judge's review of the record supplied no basis for affirming the Commissioner that was not "explicit or readily implicit in the ALJ's findings."   *Reynolds v. Colvin*, Civil Action No. 6:13-cv-22604, 2014 WL 4852250, at *5 (S.D. W. Va. Sept. 29, 2014) (rejecting a similar "post hoc" argument).   In any case, the Court has conducted a de novo review of those parts of the PF&R to which Plaintiff made timely objection and makes its decision to affirm the ALJ's decision independent of the Magistrate Judge's reasoning.   The Court cites the PF&R here merely for the purpose of reiterating the substantial evidence in support of the ALJ's step three determination regarding effective ambulation.

In short, Plaintiff suffered from chronic "post-traumatic" foot pain as a "common result" of the severe nature of the impact that caused the fracture to his foot in October 2011.   (ECF No. 9–10 at 21.)   However, Plaintiff's result was ultimately "quite good as far as the reduction and healing goes."   (*Id*.)   With respect to Plaintiff's ability to ambulate and use of hand-held assistive devices, the record contains one isolated (and somewhat ambiguous) reference to the Plaintiff's use of crutches—and that was pursuant to an examination in February of 2012, only three months after the initial surgery.   (*See* ECF No. 9–11 at 4–6 (noting that Plaintiff had a "limping gait" and "walks crutch").   While there is one reference in the record to Plaintiff limping, demonstrating an "antalgic gait," and even using a cane, (*see id*. at 10), there is no other evidence suggesting an impairment so extreme as to require the use of a hand-held assistive device that would require two hands to operate.   (*See* ECF No. 9–9 at 30 (Dr. Schaffzin RFC form indicating that the use of a medically required hand-held assistive device was necessary for ambulation, but nonetheless concluding that Plaintiff could stand or walk for at least one hour a day and that Plaintiff was not disabled).)   Moreover, as discussed by the ALJ, there was evidence demonstrating that Plaintiff had a normal gait, (ECF No. 9–10 at 34), and that he was "self-reliant" in daily activities, (*id*. at 30.)   Accordingly, the ALJ's conclusion that Plaintiff had not shown an inability to ambulate effectively is supported by substantial evidence.

For these reasons, the Court **OVERRULES** Plaintiff's second objection.

## B.   New Evidence Submitted to Appeals Council

Plaintiff's third and final objection is that the Magistrate Judge erred in his decision not to remand this matter for further consideration in light of new evidence submitted by the Plaintiff to the Appeals Council subsequent to the written decision of the ALJ.   In particular, Plaintiff

17

contends that the new evidence would have "compelled additional considerations by the ALJ" at the RFC stage, namely consideration of "potential manipulative limitations as a result of [Plaintiff's] cervical spine arthropathy" which had not previously been considered by the ALJ. (ECF No. 18 at 7.)

As an initial matter, the Court notes that Plaintiff's reliance on the factors articulated in *Borders v. Heckler*, 777 F.2d 954 (4th Cir. 1985), is misplaced.   In *Borders*, the court was presented with the situation in which a claimant submitted additional evidence after the Appeals Council had declined review and the decision of the ALJ had become the final decision of the SSA.   *Id*. at 955; *see also Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (noting that denial of review by the Appeals Council makes the decision of the ALJ the final decision of the Commissioner).   Faced with the presentation of such new evidence, totally unconsidered by any representative of the SSA, the court articulated a four factor test for determining when remand to the Commissioner for further consideration would be appropriate. *Borders*, 777 F.2d at 955 (stating that remand would be appropriate where (1) newly submitted evidence is relevant and (2) material, (3) good cause justifies the claimant's failure to submit the evidence to the SSA while his claim was pending before the agency, and (4) the claimant presents to the reviewing court "a general showing of the nature" of the evidence).

As the third prong of the *Borders* test indicates, however, the test is geared toward the situation in which evidence is submitted to a reviewing court after a final decision by the Commissioner has been reached.   *See, e.g.*, *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 (S.D. W. Va. 1992) (applying the test to evaluate evidence submitted to reviewing court after Appeals Council had denied review).   In that way, the test addresses the

factual situation contemplated by sentence six of 42 U.S.C. § 405(g), which allows for remand where "new evidence has come to light *that was not available to the claimant at the time of the administrative proceeding* and that evidence might have changed the outcome of the prior proceeding." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991) (emphasis added) (citing *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).   That factual situation, however, is different than the one presented in the instant case in which Plaintiff's proffered evidence *was* submitted to the SSA, albeit to the Appeals Council after consideration by the ALJ.

The Fourth Circuit addressed this factual situation in *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011), where it described the procedure for submission of new evidence to the Appeals Council as follows:

> The regulations also specifically permit claimants to submit additional evidence, not before the ALJ, when requesting review by the Appeals Council.  *See* [20 C.F.R.] §§ 404.968, 404.970(b).   In such cases, the Appeals Council first determines if the submission constitutes 'new and material' evidence that 'relates to the period on or before the date of the [ALJ's] hearing decision.'  *Id*. § 404.970(b).   Evidence is new 'if it is not duplicative or cumulative' and is material if there is 'a reasonable possibility that the new evidence would have changed the outcome.'  *Wilkins*, 953 F.2d at 96. . . .
>
> Confronted with such new and material evidence, the Appeals Council then 'evaluate[s] the entire record including the new and material evidence.'  [20 C.F.R.] § 404.970(b).   After this evaluation, if the Appeals Council finds that the ALJ's 'action, findings, or conclusion is contrary to the weight of the evidence currently of record,' *id*., it will grant the request for review and either issue its own decision on the merits or remand the case to the ALJ.  *Id*. §§ 404.967, 404.977(a), 404.979.   But if upon consideration of all of the evidence, including any new and material evidence, the Appeals Council finds the ALJ's action, findings, or conclusions not contrary to the weight of the evidence, the Appeals Council can simply deny the request for review.

*Id*. at 704–705.

In this case, the Appeals Council expressly considered, and made a part of the administrative record, about fourteen pages of medical evidence submitted by Plaintiff after the

ALJ decision.   (*See* ECF No. 9–2 at 2–7.)   Because the Appeals Council did so, this Court will assume it considered the evidence to be new and material and relate to the relevant time period.   *See* 20 C.F.R. § 404.970(b) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.").   The Appeals Council further concluded, however, that the new and material evidence did "not provide a basis for changing the [ALJ's] decision," and accordingly denied review.   (ECF No. 9–2 at 2–3.)   As noted in *Meyer*, "nothing in the Social Security Act or regulations promulgated pursuant to it requires that the Appeals Council explain its rationale for denying review."   *Meyer*, 662 F.3d at 705.

When the Appeals Council considers new evidence and incorporates that evidence into the record, but denies review, a reviewing court's task is to "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings."   *Wilkins*, 953 F.2d at 96; *see also Waters v. Astrue*, 495 F. Supp. 2d 512, 514 (D. Md. 2007) ("When the Appeals Council incorporates new evidence into the record, the Court must review the record as a whole including the new evidence").   Ultimately, however, "it is the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence."   *Davis v. Barnhart*, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005) (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).   Accordingly, when a district court reviews the record for substantial evidence in light of new evidence considered by the Appeals Council but not the ALJ, it should focus on determining whether that new evidence "is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports."   *Dunn v. Colvin*, 973 F. Supp. 2d 630, 642 (W.D. Va. 2013).   Where no such conflict is present, the case can be decided

20

on the existing record without remand.   *Id.*; *see also Smith v. Chater*, 99 F.3d at 638–639 (noting

that the standard for assessing the effect of additional evidence submitted to the Appeals Council

is "not whether we agree with the ALJ's decision after taking a fresh look at [the evidence], but

whether the ALJ's decision is supported by substantial evidence," and upholding ALJ's decision

notwithstanding the presence of new evidence where that decision was supported by substantial

evidence).

    In this case, Plaintiff argues that the newly submitted evidence would have affected both

the ALJ's RFC assessment and ultimate determination of disability.   The Court disagrees.

Viewing the new evidence in accord with the record as a whole, the ALJ's RFC determination is

supported by substantial evidence.   Accordingly, remand is unnecessary.

    The additional evidence at issue in this case consists of about three pages[8] of treatment

notes from Dr. Nielsen, who treated Plaintiff for back and neck pain related to his cervical spine

arthopathy, an impairment the ALJ determined to be severe at step two of the analysis.   The

original record included treatment notes from Plaintiff's monthly visits with Dr. Nielsen from

April 4, 2012 to April 3, 2013, (ECF No. 9–11 at 12–15), and the ALJ expressly considered these

notes and Dr. Nielsen's notes in formulating her RFC.   (*See* ECF No. 9–2 at 24–25.)   The new

evidence is merely a continued record of treatment notes between April 3, 2013 and October 16,

2013.[9]   (*See* ECF No. 9–11 at 45–47.)

---

[8] Plaintiff submitted two exhibits that were ultimately made a part of the record by the Appeals Council.   The first consists of a two-page printout from Morad Hughes Health Center demonstrating that Dr. Nielsen had requested an MRI as part of his assessment of Plaintiff's neck pain.   (See ECF No. 9–11 at 41–42.)   The second includes Dr. Nielsen's treatment notes, referenced above, and an evaluation from PARS Pain Clinic from April 17, 2013, that appears to be a duplicate of a document that was part of the original record before the ALJ.   (*Compare* ECF No. 9–11 at 7–11 *with* ECF No. 9–11 at 49–53.)   In her federal court filings, Plaintiff only cites the treatment records from Dr. Nielsen in her arguments concerning the material effect of additional evidence, and accordingly the Court will consider that evidence only in determining whether remand is appropriate.

[9] The Court notes that the ALJ decision was rendered on September 6, 2013, and as such some of the treatment records

Dr. Nielsen's treatment notes describe Plaintiff's back and neck pain, which he indicated had become "persistent" since the accident in which he broke his foot. (*Id*. at 12.) At the beginning of his treatment, Plaintiff consistently rated his average daily pain as between a six and eight on a ten-point scale, but that pain level generally settled on a five in August 2012 and did not increase above that for the remainder of the treatment period in the record before the ALJ, culminating in April 2013. (*See id*.) Plaintiff visited Dr. Nielsen approximately once per month, and in each report after August 2012 the doctor noted that Plaintiff's pain was consistent with an "adequate" level of function. Dr. Nielsen prescribed the Plaintiff a regimen of painkillers and other medication which was generally able to keep Plaintiff's pain under control. Although Plaintiff continued to have pain in the back and neck, which Dr. Nielsen determined to be "arthritic," (*id*. at 13), the doctor continued to be of the opinion that Plaintiff's impairment did not present a "surgical condition." (*Id*. at 15.)

The ALJ reviewed these treatment records, as well as the medical opinions of several other treating, examining, and state agency medical sources. She compared these records to Plaintiff's reports about the limiting effects of his symptoms and ultimately determined that the objective medical evidence in the record demonstrated that Plaintiff is capable of performing medium work, subject to certain limitations to account for his medically determinable severe impairments. (*See* ECF No. 9–2 at 22.) With respect to Dr. Nielsen's treatment in particular, the ALJ surveyed the available record and noted the evidence of significant impairment, but ultimately credited Dr.

---

do not relate to the relevant time period in that they are from after the decision by the ALJ. In particular, Plaintiff's final two visits, including the visit on September 18, 2013 in which Plaintiff was diagnosed for the first time with "some paresthesia" in right arm and hand, (ECF No. 9–11 at 46), occurred after the ALJ hearing decision. Nonetheless, although it did not have to under the relevant regulations detailed above, the Appeals Council considered that evidence. As stated below, the Court agrees with its ultimate conclusion that such evidence does not provide a basis for reconsideration.

Nielsen's conclusion that Plaintiff did not appear to present a surgical condition.   (*Id.* at 24.) These conclusions are supported by substantial evidence in the record before the ALJ and Plaintiff does not contend otherwise.   The new records, summarizing continuing developments in a treatment relationship the ALJ had already taken into consideration, do not alter this conclusion. *See Meyer*, 662 F.3d at 706 (noting that evidence submitted to the Appeals Council would be more likely to require additional explanation from the SSA where "the new evidence constitutes the only record evidence as to the opinion of the treating physician"); *Thomas v. Comm'r of Soc. Sec.*, 24 F. App'x 158, 161–162 (4th Cir. 2001) (remanding a case for further record development where the claimant submitted treatment records from a new physician to the Appeals Council and the court was unable to determine whether the Appeals Council properly understood that physician to be a treating physician).

As noted above, the new evidence picks up where the prior treatment records leave off, covering Plaintiff's monthly visits with Dr. Nielsen between April and October of 2013.   These updated treatment records detail only slight changes with respect to Plaintiff's condition.   His pain level briefly spiked to six out of ten in the early summer months, dropped as low as four in response to a new combination drug treatment program, and ultimately settled at a six, which Dr. Nielsen associated with a "marginal level of function."   (ECF No. 9–11 at 46–47.)   The treatment notes reflect a slight increase in the severity of Plaintiff's pain and reflect some ineffectiveness on the part of spinal injections to improve his condition.   (*Id.*)   However, the ALJ considered the earlier treatment records, which showed Plaintiff's pain as high a seven or eight at times and similarly detailed instances of non-responsiveness to proposed treatment options.   (*See id.* at 14–15 (noting that a trial of topical treatment had only improved Plaintiff's condition "minimally").)   The more

recent records showing a slight uptick in pain but not materially changing Plaintiff's medical condition do not suggest additional functional limitations or conflict with the medical evidence in the record before the ALJ.   Nor do they call into question or undermine the reliability of Dr. Nielsen's earlier treatment records upon which the ALJ relied to assess RFC.   *See Brown v. Comm'r of Soc. Sec.*, 969 F. Supp. 2d 433, 441–42 (W.D. Va. 2013) (upholding decision of Commissioner in light of new medical opinion evidence submitted to Appeals Council where that opinion did not "identify a condition that the ALJ had not already considered," "suggest that Plaintiff's impairment was more severe than that which the ALJ already concluded," or "identify or describe any functional limitations beyond the RFC . . . that the ALJ had assessed"); *cf. Ridings v. Apfel*, 76 F. Supp. 2d 707, 710 (W.D. Va. 1999) (remanding in light of new medical report not considered by the ALJ where that report showed "a dramatically different picture" of the claimant's impairment than that presented by the medical evidence in the record before the ALJ).

Plaintiff argues that the new evidence, particularly Dr. Nielsen's identification of "some paresthesia" in his right arm and hand, (ECF No. 9–11 at 46), present a potential manipulative limitation that was not present in the record before the ALJ.   The Court cannot determine, however, that this isolated reference undermines the ALJ's RFC assessment and requires remand. Dr. Nielsen's notes do not indicate the severity of the paresthesia or otherwise suggest that the condition would independently impose any limitations on Plaintiff's ability to function.   Without evidence suggesting additional functional limitation, the Court does not find that the evidence relating to paresthesia conflicts with or calls into question any of the ALJ's earlier findings with respect to Plaintiff's chronic neck and back pain.   The ALJ dutifully examined the record of Plaintiff's treatment with respect to such impairments, a record which evinces notable limitations

on Plaintiff's daily functioning, and formulated an RFC that accounted for all of those limitations. As noted above, Plaintiff's paresthesia was not even identified until after the ALJ's decision was issued.   And while evidence of that condition does not affect the ALJ's RFC assessment, for the reasons discussed above, it is worth noting that "if a social security claimant develops additional impairments or those impairments worsen after his first application for benefits, the proper recourse is to submit a new application."[10]   *Dunn*, 973 F. Supp. 2d at 643.

In short, nothing about the new evidence submitted by Plaintiff to the Appeals Council alters the conclusion that substantial evidence in the record as a whole supports the ALJ's determinations as to RFC and disability.   Accordingly, the Court **OVERRULES** Plaintiff's third objection.

## IV.     Conclusion

For the reasons discussed herein, the Court **OVERRULES** the Objections, (ECF No. 18), **ADOPTS** the PF&R, (ECF No. 17), to the extent it is consistent with this Memorandum Opinion and Order, **DENIES** Plaintiff's request for judgment on the pleadings, (ECF No. 11), **GRANTS** the Commissioner's request for judgment on the pleadings, (ECF No. 14), **AFFIRMS** the decision of the Commissioner, and **DISMISSES** this action from the Court's docket.

---

[10] This Court's determination that Plaintiff's newly submitted evidence does not warrant remand of the present claim does not prevent Plaintiff from filing a new claim for disability should his condition worsen in the future.   Although any final decision of the Commissioner on the issue of disability carries some preclusive effect, the Commissioner "may properly apply administrative res judicata in bar only if [a subsequent claim] is the 'same' claim earlier denied." *McGowen v. Harris*, 666 F.2d 60, 65 (4th Cir. 1981) (quoting 20 C.F.R. § 404.957(c)(1)).   Where a claimant presents a subsequent application for benefits alleging a different onset date and covering a different period of disability, such application would not generally present the "same facts," 20 C.F.R. § 404.957(c)(1)," or "same issues," *id.*, as the previously filed application.  *See Luckey v. Astrue*, 331 F. App'x 634, 638 (11th Cir. 2009); *see also Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1989) (denying a request for remand in light of new evidence detailing the nature of the claimant's condition after the ALJ's decision and suggesting that if the claimant "has developed additional impairments since his first application for benefits, he may file a new application").

25

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        March 31, 2016

_____

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE